## UNITED STATES DISTRICT COURT
for the

| | |
|---|---|
| Israel Malachi Zickafoose, Pro Se | ) ) ) ) ) ) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action No. **8:25 CV 01280** |
| | ) ) ) |
| Upstart Network Inc. | ) ) |
| _Defendant(s)_ | ) |

AUG 1 2025 PM3:58
FILED - USDC - FLMD - TPA

## PLAINTIFF'S AMENDED COMPLAINT

### I.    INTRODUCTION

Plaintiff Israel Malachi Zickafoose, appearing pro se, brings this civil action against Defendant Upstart Network Inc. for willful violations of federal consumer protection laws, including but not limited to the **Fair Debt Collection Practices Act** (FDCPA), the **Fair Credit Reporting Act** (FCRA), and applicable provisions of the **Uniform Commercial Code** (UCC), as well as for common law claims arising from breach of contract, fraud, misrepresentation, invasion of privacy, and related unlawful conduct.

This action stems from an offer to contract that was conditionally accepted by the Plaintiff, tendered back to the Defendant, processed, accepted, then later misrepresented by the Defendant, despite the Plaintiff lawfully executing the instrument with a qualified indorsement and never receiving proper notice of dishonor.

Furthermore, after Plaintiff lawfully requested full validation of the alleged debt, Defendant failed to comply with statutory obligations and instead engaged in continued reporting, communication, and misrepresentation; all without proof of standing, lawful possession of the original instrument, or a valid chain of title. Additionally, the Defendant's response to the initial debt validation request was wholly faulty, deceptive, inaccurate, and included many inconsistencies that change the enforceability of the original contract as described herein. Plaintiff now seeks full and just relief for the extensive harm caused by Defendant's reckless disregard for the law and the rights of the consumer.

### II.    PARTIES

Plaintiff, Israel Malachi Zickafoose, is a natural person and resident of Brandon, Florida. He is a "consumer" as defined by **15 U.S.C. § 1692a(3)** and is otherwise entitled to protections afforded under federal and state consumer protection statutes and contract law.

Defendant, Upstart Network, Inc. ("Upstart"), is a Delaware corporation with its principal place of business located at 2950 S. Delaware Street, Suite 300, San Mateo, California 94403. At all times relevant, Upstart was engaged in the business of offering consumer credit products and collecting debts related thereto. Upstart qualifies as both a "creditor" and a "debt collector" under applicable federal and state law, including but not limited to the **Fair Debt Collection Practices Act** (FDCPA), **15 U.S.C. § 1692** et seq.

## III.    <u>JURISDICTION AND VENUE</u>

This Court has subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1331**, as the claims arise under the laws of the United States, including the **Fair Debt Collection Practices Act** (FDCPA), **15 U.S.C. § 1692** et seq. Jurisdiction is further conferred by **15 U.S.C. § 1692k(d)**, which provides that an action to enforce liability under the FDCPA may be brought in any appropriate United States district court.

This Court also has supplemental jurisdiction over any related state law claims pursuant to **28 U.S.C. § 1367**, as those claims form part of the same case or controversy under Article III of the United States Constitution.

Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to **28 U.S.C. § 1391(b)**, because a substantial part of the events or omissions giving rise to the claims occurred within this District, and Defendant conducts business and derives substantial revenue from activities within this District.

## IV.    <u>GENERAL FACTS</u>

The term(s) "loan contract", "contract", "negotiable instrument", "instrument", "agreement", "tender of offer", and "offer" are all referring to the same document as stated herein.

The term(s) "signature", and "indorsement" mean the same thing.

The term(s) "sign", and "indorse" mean the same thing.

On or about **March 9, 2025**, Plaintiff Israel Malachi Zickafoose executed and returned to Upstart Network Inc. a written agreement for an unsecured personal loan in the principal amount of **$10,000.00**.

In executing the agreement, Plaintiff affixed a **qualified indorsement**, clearly stating **"W/O Recourse"** above his autograph signature. This language restricted future obligations and asserted Plaintiff's rights under UCC Article 3 as the indorser and offeree. The indorsement operated as a conditional acceptance, thereby constituting a **counter-offer** under **Restatement (Second) of Contracts § 59**, which provides: *"A reply that purports to accept an offer but is conditional on different terms is a counter-offer, not an acceptance."*

This principle is affirmed in **Long v. Shorebank Dev. Corp., 729 So. 2d 1061, 1064 (Fla. 1999)**, where the Florida Supreme Court held that a conditional acceptance constitutes a counter-offer that requires affirmative acceptance to form a binding agreement.

The contract, titled and structured as a promissory note, was duly executed and returned to Upstart, **initiating negotiation** within the meaning of **UCC § 3-201(a)** and transforming the offer into a **negotiable instrument**. Upstart then immediately accepted and processed the instrument without objection.

Upstart then disbursed the agreed-upon consideration to Plaintiff's account, despite having the legal right under **UCC § 3-501** and **§ 3-603** to reject, return, or seek renegotiation of the instrument within a reasonable time if it did not assent to its terms. **It did none of these.**

At no time did Upstart contact Plaintiff to dispute, reject, return, or dishonor the instrument. Nor did it provide any written notice of defect, objection, or refusal. Instead, Upstart retained the instrument, performed upon its terms, and disbursed consideration, thus accepting the counter-offer through conduct, consistent with **UCC § 3-103(a)(7)** and general principles of contract formation.

Plaintiff, acting in good faith, sought verification of the legal standing and ownership of the alleged debt through a formal **Debt Validation Letter** dated **April 7, 2025**, sent immediately after first contact about the debt was made by Upstart on **March 18, 2025**, invoking his rights under the **Fair Debt Collection Practices Act** (FDCPA) and **15 U.S.C. § 1692g**. In this letter **(See Exhibit 1 pgs. 1-4)**, Plaintiff lawfully requested:

- The name and address of the current creditor;

- A full accounting of the debt claimed;

- Proof of ownership or assignment of the debt;

- A certified copy of the original agreement, with all pages, signatures, and indorsements made clear and visible;

- The authority and identity of any debt collector contacting him;

- Confirmation that the alleged debt had not been discharged, sold, securitized, or otherwise extinguished.

- A lawful Cease and Desist pursuant to **§ 1692c(c)**

This letter invoked Defendant's statutory obligation under **15 U.S.C. § 1692g(b)** to cease all communication and collection efforts until the alleged debt was properly validated.

In willful disregard of its statutory duties, Upstart continued its collection efforts, including issuing a **"Notice of Default and Right to Cure"** dated **July 12, 2025**. It also sent numerous other communications, including but not limited to; emails, letters, automated text messages, and account notifications. This occurred despite Upstart's failure to furnish any

material evidence validating the debt in accordance with the applicable statutes and obligations set forth in Plaintiff's written demand.

Upstart's ongoing contact *(See Exhibit 4 pgs. 1-27)* constitutes a willful violation of the Fair Debt Collection Practices Act **(15 U.S.C. § 1692g)** and the Fair Credit Reporting Act **(15 U.S.C. § 1681s-2)**. Despite failing to validate the debt, Defendant has continued to assert its validity through direct communication, derogatory credit reporting, and knowingly misrepresenting its enforceability, all in connection with a debt that is both fraudulent and factually inaccurate.

On or about **May 3, 2025**, Plaintiff issued a formal **Notice of Intent to Sue** to both Upstart Network, Inc. and U.P. Oberon Trust, detailing multiple violations of the FDCPA, FCRA, and related federal consumer protection statutes **(See Exhibit 3 pgs. 4-5)**. This letter referenced Plaintiff's prior debt validation request, sent approximately one month earlier, to which Defendants had responded with an inadequate and non-compliant attempt at validation a few days later.

In the May 3 notice, Plaintiff demanded the following remedies consistent with federal consumer protection law:
**(1)** full and proper validation of the alleged debt pursuant to **15 U.S.C. § 1692g(b)**,
**(2)** removal of all inaccurate derogatory tradelines from Plaintiff's credit reports with Equifax, Experian, and TransUnion in accordance with **15 U.S.C. § 1681s-2(b)**,
**(3)** removal of all improperly assessed late fees, and
**(4)** immediate and permanent cessation of all collection activity.

These demands were not only consistent with the governing consumer protection statutes, but also aligned with a prior written agreement by Upstart to cease collection efforts, as expressly confirmed in an email dated **April 14, 2025 (See Exhibit 4 pg. 5)**. Despite acknowledging its obligation to cease collections, Upstart continued its inconsistent and unlawful conduct by maintaining derogatory credit reporting, refusing to correct the underlying issues, and willfully ignoring the statutory mandates outlined in Plaintiff's notice.

In response to Plaintiff's Debt Validation Letter, Plaintiff received correspondence dated **May 6, 2025**, purporting to validate the debt. However, the letter identified **Cross River Bank** as the creditor and listed the *debtor* as **Dennis Serbeh**, an individual with no connection to Plaintiff. It also referenced a loan ID number **(L3311419)** that does not match Plaintiff's actual loan account **(L5098841) (See Exhibit 2 pgs. 1-2)**. This misidentification constitutes a material misrepresentation of the character and ownership of the alleged debt, in violation of **15 U.S.C. § 1692e(2)(A)**.

This misidentification of both the borrower and the loan ID is not a clerical error; it constitutes a material misrepresentation in violation of **15 U.S.C. § 1692e(2)** and **§ 1692e(10)**, and a failure to validate the alleged debt as required under **§ 1692g**. *No lawful validation was provided regarding Plaintiff's original contractual obligation.*

The **May 6** letter compounded prior inconsistencies by identifying Cross River Bank as both the original and current creditor while simultaneously providing *three conflicting addresses* **(See Exhibit 2 pgs. 2, 4)**, further undermining the credibility of Defendant's representations:

- 400 Kelby St., 14th Floor, Fort Lee, NJ 07024;

- P.O. Box 1503, San Carlos, CA 94070;

- 2115 Linwood Ave., Fort Lee, NJ 07024.

The promissory note enclosed in Defendant's response did include the correct loan ID (**L5098841**); however, the copy was of such low quality that Plaintiff's qualified indorsement, **"W/O Recourse"**, was entirely obscured, rendering the contractual terms not credible and legally ambiguous. This indorsement is clearly visible in the original digital upload retained by Upstart. Its exclusion from the furnished copy constitutes the concealment of a material term, particularly troubling, as its production was specifically requested in Plaintiff's **April 7 Debt Validation Letter (See *Exhibit 1 pgs. 1-4*)** for purposes of transparency and legal clarity.

Additionally, each page of the documents provided stated, **"The Authoritative Copy of this record is held at na2.docusign" (See *Exhibit 2 pg. 4*)**, further confirming the record is digital, authenticated, and under Upstart's control. The omission of the indorsement cannot be attributed to a loss or misfiling; it was knowingly excluded.

Plaintiff submitted a debt validation request directly to Defendant Upstart on **April 7, 2024**, pursuant to **15 U.S.C. § 1692g(b)**, requesting full verification and itemization of the alleged debt. In parallel, Plaintiff submitted a direct dispute to the national credit reporting agencies under **15 U.S.C. § 1681i(a)(1)(A)**, contesting the accuracy and legitimacy of the tradeline furnished by Defendant. The credit reporting agencies responded by affirming the validity of the debt based solely on documentation supplied by Upstart; documentation which, as previously stated, included the wrong borrower's name, the wrong loan ID, and listed Cross River Bank with three conflicting addresses.

This contradiction exposes a significant breakdown in the reinvestigation process governed by the Fair Credit Reporting Act (FCRA). Under **§ 1681i(a)(5)(A)**, any information that cannot be verified by the furnisher must be deleted or corrected. Yet, Upstart's materially flawed and inconsistent response should have rendered the tradeline unverifiable, and should have made known of this inaccuracy to the credit reporting agencies. Despite this, the credit reporting agencies accepted the validation at face value, thereby perpetuating an inaccurate and unlawfully reported tradeline.

Upstart's failure to provide proper validation under **§ 1692g(b)**, to both the reporting agencies and Plaintiff, while simultaneously continuing to furnish that same defective information to third parties, amounts to a willful violation of both the **FDCPA** and **FCRA**. The result has been ongoing harm to Plaintiff's creditworthiness, reputation, and peace of mind.

Accordingly, the entirety of the obligations arising from **Plaintiff's qualified indorsed Loan Contract L5098841** are **null and void as a matter of law**. Defendant's actions, and those of its agents, have produced a troubling pattern of *legal inconsistencies, material misrepresentations*, and conduct *indicative of fraud*. The record is so marred by irregularities and red flags that serious questions arise concerning Defendant's legitimacy, internal

controls, and ethical posture as a purportedly lawful business entity. These issues warrant not only judicial scrutiny but also potential regulatory and criminal investigation.

On **July 12, 2025**, Plaintiff received a letter from Defendant titled **"Notice of Default and Right to Cure"**, falsely alleging that Plaintiff had defaulted on the promissory note by failing to make required payments. This accusation is wholly without merit and *categorically denied in its entirety*. The notice presumes liability where none exists, ignoring both the legal effect of Plaintiff's original **"W/O Recourse"** qualified indorsement and Defendant's ongoing failure to provide lawful validation under **15 U.S.C. § 1692g(b)**.

Defendant's actions constitute an attempt to enforce an extinguished and invalid obligation through deceptive and unlawful means, in violation of **15 U.S.C. § 1692e(2)**, **§ 1692e(10)**, and **§ 1692f**.

Defendant's course of conduct reflects a deliberate pattern of *inconsistency, contradiction,* and *noncompliance*. Upon receiving the executed promissory note bearing Plaintiff's qualified indorsement, Defendant failed to *reject, object,* or *return* the instrument within a reasonable time, as required under **UCC § 3-501**. Instead, Defendant acted upon the instrument, disbursed the consideration, and thereby accepted the terms through conduct. Yet later, Defendant attempted to disavow its own *contractual acceptance* by issuing a facially defective and misleading validation letter on **May 6, 2025**, naming the *wrong borrower,* listing the *wrong loan ID,* and presenting *conflicting addresses and creditor identities.*

These failures were compounded when Defendant continued its collection attempts through numerous emails, text messages, and account notifications, all in violation of **15 U.S.C. § 1692c** and despite Plaintiff's lawful and acknowledged cease-and-desist demand. At the same time, the tradeline corresponding to the disputed loan remained on Plaintiff's credit reports, with no correction or deletion, and continues to cause ongoing injury to Plaintiff's credit profile in violation of **15 U.S.C. § 1681s-2(b)** and **§ 1692g(b)**.

To further cloud the legal picture, Defendant's **July 12** notice introduced yet another alleged creditor; **Wilmington Savings Fund Society**, as Trustee of Upstart Loan Trust 2, contradicting earlier claims that **Cross River Bank** or **UP Oberon Trust** held the debt. This shifting creditor identity, devoid of any notice of assignment or transfer, violates **15 U.S.C. § 1692g(a)(5)** and deprives Plaintiff of a clear party against whom to assert rights or defenses. The failure to provide a transparent chain of title renders the debt uncollectible under the FDCPA and deprives Defendant of standing.

To date, Plaintiff has received no legally sufficient validation of the alleged debt. Instead, the only documentation provided by Defendant has:

- Misidentified the borrower as "Dennis Serbeh";

- Referenced the incorrect loan ID **"L3311419"** rather than Plaintiff's actual loan ID **"L5098841"**;

- Listed three conflicting addresses for the alleged creditor Cross River Bank;

- Omitted the qualified **"W/O Recourse"** indorsement from the contract copy;

- Named three inconsistent entities as creditor (Cross River Bank, Wilmington Savings Fund Society, and U.P. Oberon Trust) and;

These are not harmless clerical errors, they are material and substantive violations of federal law. Defendant's conduct constitutes a clear pattern of *misrepresentation, abuse,* and *disregard for statutory procedure,* in violation of **15 U.S.C. § 1692e, § 1692f,** and **§ 1692g,** as well as **UCC Articles 3 and 9.** Defendant has failed to establish a lawful right to collect, failed to produce the original instrument with complete terms, and failed to disclose the true party in interest.

Even if Defendant asserts the *"bona fide error"* defense under **15 U.S.C. § 1692k(c),** such defense is unavailable where actual knowledge exists. Defendant knew of the dispute, had the original instrument in its control, and nonetheless persisted in furnishing false information to Plaintiff and to third-party credit agencies. No accounting ledger, no assignment statement, and no original instrument with visible qualified indorsement has ever been produced.

Accordingly, Plaintiff affirmatively asserts that *no lawful debt exists.* Any further attempt to collect or enforce the alleged obligation is not only unlawful under both federal and state law but is actionable and subject to monetary and injunctive relief.

## V.    DECLARATION OF THE INSTRUMENT'S COMMERCIAL NATURE AND DEMAND FOR PRODUCTION PURSUANT TO RULE 1002

**Nature and Value of the Original Instrument**
Plaintiff Israel Malachi Zickafoose affirms that the loan agreement executed on or about **March 9, 2025,** and delivered electronically to Upstart Network, Inc., constitutes a **negotiable instrument** under Article 3 of the Uniform Commercial Code, codified in **Florida Statutes § 673.1041.** The instrument was created when Plaintiff conditionally accepted an offer of credit, returned with a **qualified indorsement** clearly stating **"W/O Recourse",** and thereby converted the transaction into a binding counter-offer with all essential elements of a negotiable instrument under Florida law:

- It is in writing;
- It is signed by the Plaintiff;
- It contains an unconditional promise to pay a sum certain;
- It is payable at a definite time;
- It is payable to the order of the named lender, Cross River Bank.

This loan contract, structured and titled as a promissory note, was accepted, processed, and acted upon by Upstart without any objection or notice of rejection, thus forming a binding agreement through conduct.

**Treatment of the Instrument as a Commercial Asset**
Upon receipt of the instrument, Defendants or their agents were legally obligated under **UCC § 3-603** and **§ 3-501** to reject or return the note if they did not agree to its terms. **They did neither.** Instead, they accepted the instrument and disbursed funds, indicating acceptance.

Given the clear and restrictive **"W/O Recourse"** indorsement, the original version of this instrument would have prevented monetization or securitization in its initial form. Therefore, any alteration or concealment of this indorsement represents not just misconduct, but an intentional act to unlock the enforcement and liquidity benefits that were explicitly barred by Plaintiff's lawful reservation of rights.

This supports the conclusion that the note was subsequently handled in a manner inconsistent with its original, unambiguous terms, and such handling was necessary for the Defendants or their assigns to profit commercially through securitization or collateralization.

Federal Disclosures Confirm the Commercial Use of Instruments as the *Federal Reserve Bank of Chicago* noted in *Modern Money Mechanics*:
"What they do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts."
**(Modern Money Mechanics, FRB Chicago, p. 3 - 4)**

Similarly, The *FDIC's Call Report Instructions* confirm that banks must record such consumer loan instruments as loan receivables at their full face value.

*The Office of the Comptroller of the Currency* (OCC) explains that a bank "records a loan receivable as an asset and credits the customer's deposit account for the same amount."
**(OCC Bank Accounting Advisory Series, August 2018, Topic 3A)**

These disclosures prove that Plaintiff's signature created a bankable financial asset which was used by Defendant Upstart for institutional gain, while simultaneously asserting a duplicative obligation against Plaintiff. Such conduct, treating the instrument as both asset and liability, even after transferability was not only restricted via qualified indorsement, but then becoming lawfully unenforceable, exceeds lawful financial practice and contradicts the terms Plaintiff imposed with his indorsement and the actions of Defendant Upstart in their vain attempt to validate and further collect upon the debt.
**Demand for the Original Instrument Under Rule 1002**
Accordingly, pursuant to Federal Rule of Evidence 1002, Plaintiff hereby demands production of the original instrument, unaltered and in its complete form, including:

- All signatures and indorsements made CLEAR and VISIBLE;

- The Plaintiff's signature file that was uploaded to the original contract held by Upstart in DocuSign;

- Front and back pages of the instrument;

- Any custodial, endorsement, or assignment markings;

- And the complete chain of custody and title from execution to the present.

**Rule 1002** expressly requires an original document where the contents of a writing are at issue. Here, the **"W/O Recourse"** indorsement is not only material, but dispositive. **It determines the enforceability of the note.** Without it, Plaintiff's intent, liability, and the terms of contract acceptance cannot be properly evaluated.

Due to the Defendant's ongoing refusal to produce material validation of the debt as required by **15 U.S.C. § 1692g(b)** and the failure to perform a timely and reasonable reinvestigation **(30 days)** under **15 U.S.C. § 1681i(a)(1)(A)** following Plaintiff's direct dispute to the credit bureaus, Plaintiff now formally demands production and disclosure of the original instrument bearing Plaintiff's qualified indorsement. The original instrument is necessary not only to verify the alleged debt but to further confirm that it has been unlawfully securitized or transferred without Plaintiff's knowledge or consent.

If the Defendants fail to produce the original instrument in full, Plaintiff respectfully requests that the Court issue an adverse inference under spoliation doctrines. The instrument lies exclusively within Defendants possession or that of their agents, and their failure to produce it must be treated as presumptive evidence of its unlawful alteration, destruction, or concealment. See *Golden Yachts, Inc. v. Hall, 920 So. 2d 777, 780 (Fla. 4th DCA 2006).*

### Demand for Disclosure of Securitization or Destruction
Plaintiff further demands that Defendant Upstart discloses under oath whether the original instrument has been:

- Pledged,

- Deposited,

- Securitized,

- Destroyed, or

- Assigned to any other loan trust, custodian, or third-party beneficiary (such as Wilmington Savings Fund Society).

If so, Defendants must provide a complete accounting of the transaction, including any and all financial benefit, book-entries, security agreements, or agents subsequently involved.

### Preservation of Legal Inference and Preemptive Clarification
Should Defendants fail or refuse to produce the original instrument, Plaintiff reserves all rights to request sanctions, affirm judicial findings, and adverse evidentiary inferences, including findings of:

- Fraudulent misrepresentation,

- Unauthorized conversion,

- Breach of fiduciary duty,

- And spoliation of material evidence.

Finally, Plaintiff expressly preempts any attempt to characterize this section as a "sovereign citizen" or "vapor money" theory. These claims are not based on fringe ideas; they are rooted firmly in commercial law, contract principles, UCC Article 3, Florida Statutes, Federal Rules of Evidence, and well-settled federal case law. Any effort by Defendants or their counsel to trivialize or mislabel Plaintiff's lawful demand or factual allegations will be treated as a bad-faith evasion of the substantive issues and evidence at the core of this case.

# VI.    CAUSES OF ACTION

**COUNT ONE: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. § 1692 et seq.)**

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

Defendant Upstart Network Inc. failed to comply with the statutory requirements of **15 U.S.C. § 1692g** by not validating the alleged debt within **thirty (30)** days after receiving a proper written request. Upstart further violated **15 U.S.C. § 1692c(c)** by continuing to contact Plaintiff after receipt and confirmation of a lawful cease and desist notice (*See Exhibit 4 pg. 5*). Defendant also misrepresented the legal status of the alleged debt in violation of **15 U.S.C. § 1692e** and engaged in harassment through repeated and unlawful communications under § 1692d (*See Exhibit 4 pgs. 1-27*).

**Damages Sought:**
Statutory: $1,000 (15 U.S.C. § 1692k(a)(2)(A))
Actual: $20,000 (emotional distress, time lost, legal preparation/fees)
Punitive: $20,000
**Total for Count One: $41,000**

**COUNT TWO: VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681 et seq.)**

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

Upstart Network Inc. willfully violated **15 U.S.C. § 1681s-2(b)** by continuing to furnish information about an unvalidated and legally disputed debt to one or more credit reporting agencies, even after the Plaintiff's lawful demand for validation and after any enforceable

obligation under the contract had extinguished. Despite actual knowledge of the dispute and the clear absence of supporting documentation, Upstart failed to conduct a reasonable investigation and instead knowingly allowed patently inaccurate information to remain on Plaintiff's credit profile for months. This reckless conduct directly contributed to the further deterioration of Plaintiff's credit score, unjustly damaging his financial reputation and obstructing access to economic opportunities. Defendant's actions were not only negligent, but were knowing, deliberate, and in direct contempt of the statutory protections afforded to consumers under the **Fair Credit Reporting Act.**

**Damages Sought:**
Statutory: $1,000
Actual: $10,000 (ongoing credit harm)
Punitive: $10,000
**Total for Count Two: $21,000**

## COUNT THREE: BREACH OF CONTRACT (COMMON LAW)

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

Upstart Network Inc. committed a willful and material breach of contract by disregarding the lawful terms under which Plaintiff accepted and executed the loan agreement. Plaintiff signed the original promissory note with a clear and restrictive qualified indorsement, **"W/O Recourse"**, thereby modifying the offer to contract in a manner permitted under Article 3 of the Uniform Commercial Code. This counter-offer was not rejected or dishonored by Upstart within any commercially reasonable time, nor was it returned or contested in accordance with **UCC § 3-501(b)(2)** or **§ 3-603(a)**, thereby constituting acceptance by conduct and disbursement of consideration.

Upstart's subsequent attempts to impose liability on Plaintiff despite the valid and enforceable indorsement, and after the disbursement of funds, amounted to a repudiation of the agreed-upon contract and a direct violation of well-established principles of contract law. A party cannot unilaterally accept the benefits of a contract while rejecting its lawful limitations. As reinforced in **Stanley v. Univ. of S. Cal., 13 Cal. 4th 105, 113 (1996)**, "*A material breach excuses further performance by the other party and gives rise to a claim for damages.*" Similarly, courts have long held that "*[a] contract accepted by performance is as binding as one accepted by express agreement*" **(Restatement (Second) of Contracts § 69)**.

Moreover, Upstart's conduct constitutes a breach under the implied covenant of good faith and fair dealing, inherent in every contract, and recognized in federal and state common law alike. By attempting to enforce terms expressly disclaimed, Upstart acted in bad faith and undermined the very integrity of contract law.

This breach has caused substantial legal and financial harm to Plaintiff, including damage to his credit, unlawful collection attempts, and the continued denial of his rights under the lawfully executed instrument.

**Damages Sought:**
Compensatory: $10,000
Consequential: $10,000
Punitive: $10,000
**Total for Count Three: $30,000**

## COUNT FOUR: FRAUDULENT MISREPRESENTATION

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

Upstart Network Inc. is liable for fraudulent misrepresentation by knowingly and willfully asserting that Plaintiff remained personally liable on a debt obligation that had been lawfully discharged through acceptance of a negotiable instrument indorsed **"W/O Recourse"**. Plaintiff's qualified indorsement, clearly made in the capacity of holder, constituted a counter-offer under **Restatement (Second) of Contracts § 59** and expressly disclaimed any recourse liability under **UCC § 3-415(b)**. Upstart accepted this counter-offer by issuing and disbursing consideration, thereby finalizing the transaction under the principles of contract and negotiable instrument law.

Despite this discharge, Upstart later misrepresented the legal status of the instrument by falsely asserting continued liability, an act of material deceit made with actual knowledge of its falsity and with intent to induce payment. Such conduct is actionable as fraudulent misrepresentation, which under the **Restatement (Second) of Torts § 525** occurs when a party "*makes a misrepresentation with knowledge of its falsity... intending to induce another to act or refrain from action in reliance upon it.*"

Furthermore, these deceptive statements were not mere mistakes or misunderstandings, they were deliberate attempts to mislead, manipulate, and coerce the Plaintiff into making payments he no longer legally owed. Courts consistently recognize that "*[a] representation is fraudulent when it is made knowingly, without belief in its truth, or recklessly, and intended to deceive*" **(See, e.g., Field v. Mans, 516 U.S. 59, 70–71 (1995)).**

Upstart's misrepresentations, made after the contract had been altered and accepted, rose to the level of constructive fraud and were used to justify subsequent threats, collections activity, and credit reporting, each furthering the harm done to Plaintiff's legal and financial standing. These actions violated not only commercial law but also fundamental principles of fairness and honesty embedded in both federal and state common law.

**Damages Sought:**
Compensatory: $20,000
Punitive: $20,000

**Total for Count Four: $40,000**

## COUNT FIVE: UNFAIR OR DECEPTIVE ACTS AND PRACTICES (UDAP)
### (Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq.)

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

Upstart Network Inc. engaged in unfair and deceptive trade practices in violation of the **Florida Deceptive and Unfair Trade Practices Act** (FDUTPA) by attempting to collect on a debt that had been lawfully discharged and for which no legal obligation remained. These acts, including misrepresenting the status of the debt and pursuing collection without basis, were likely to mislead consumers, offend public policy, and caused substantial injury not reasonably avoidable by Plaintiff.

Under **Fla. Stat. § 501.204(1)**, such deceptive conduct is unlawful. Upstart's knowing attempts to enforce a nonexistent obligation were unconscionable and materially misleading, satisfying the standard for actionable unfair practices under Florida law.

**Damages Sought:**
Statutory: $1,000
Treble Actual Damages: $30,000
**Total for Count Five: $31,000**

## COUNT SIX: INVASION OF PRIVACY / HARASSMENT

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

Despite lawful notice terminating communication rights, Upstart or its agents initiated repeated contact, including through digital and automated means (*See Exhibit 4 pgs. 1-27*). These unauthorized contacts were intrusive, emotionally distressing, and conducted with reckless disregard for Plaintiff's peace, dignity, and privacy.

**Damages Sought:**
Emotional Distress: $20,000
Punitive: $10,000
**Total for Count Six: $30,000**

**COUNT SEVEN: VIOLATION OF UNIFORM COMMERCIAL CODE ARTICLE 3 (UCC §§ 3-501 to 3-603)**

Upstart violated **UCC § 3-501(b)(2)** by failing to timely dishonor or return the instrument upon presentment. Plaintiff made presentment of the contract with a restrictive qualified indorsement (**"W/O Recourse"**), and Upstart's disbursement of funds and failure to dishonor constituted commercial acceptance. Upstart's failure to object within a commercially reasonable time, followed by attempts to enforce the instrument contrary to **§ 3-415(b)**, **§ 3-603**, and **§ 3-311**, constitutes wrongful dishonor and breach of commercial paper obligations.

**Damages Sought (commercial tort damages):**
Liquidated Loss: $10,000 (value of debt claimed void)
Additional Commercial Penalty: $20,000
Punitive: $10,000
**Total for Count Seven: $40,000**

## VII.    CONCLUSION

The actions described in this Complaint reflect a pattern of willful, deceptive, and unlawful conduct by Upstart Network Inc., who acted not only in violation of multiple federal and state laws but with full knowledge of their obligations and legal duties. From the deliberate failure to validate the alleged debt within the 30-day statutory window after receiving a lawful debt verification request, to the continued misrepresentation of the legal status of the obligation, to repeated unlawful communications and improper reporting of unvalidated information to consumer reporting agencies; each act compounded the harm inflicted upon Plaintiff. The Defendant disregarded statutory protections under the FDCPA and FCRA, breached a lawfully executed agreement that included a qualified indorsement, and introduced third-party collectors into the matter without lawful standing or contractual basis. These cumulative acts not only injured the Plaintiff financially and mentally, but also violated clear-cut provisions of the law and must be met with full accountability under the governing statutes and rules of equity.

PLAINTIFF RESPECTFULLY DEMANDS that this Honorable Court:

- **Grant judgment in favor of Plaintiff on all Counts** of this Complaint;

- **Award compensatory and punitive damages** in an amount not less than **$233,000**, as specifically outlined in the individual causes of action and calculated based on the nature, scope, and impact of Defendant Upstart's conduct;

- **Enter an order compelling Defendant Upstart** to produce the **original, unaltered financial instrument** described herein, including the original **qualified indorsement(s)** pursuant to **Federal Rule of Evidence 1002;**

- **Enter an order compelling Defendant Upstart** to confirm under oath whether the original instrument has been pledged, transferred, securitized, deposited, or destroyed, and provide all custodial records/book entries and proof of transfer, negotiation, securitization, and/or monetization of the instrument;

- In the event Defendants *cannot* or *will not* produce the original instrument, **enter findings and accurate conclusion of spoliation, adverse evidentiary inference, or presumed alteration** sufficient to support Plaintiff's allegations of misrepresentation, conversion, and fraudulent concealment;

- **Order specific injunctive relief** requiring correction of Plaintiff's credit files with *all three major credit reporting agencies* (Trans Union, Experian, and Equifax), and the **permanent removal of all tradelines, derogatory notations, and any reporting connected to the subject financial instrument and alleged debt;**

- **Award Plaintiff all costs of this action**, including filing fees, service costs, and any out-of-pocket litigation expenses incurred;

- **Grant such other and further relief as this Court deems just and equitable** under the law and facts of this case.

Plaintiff seeks not only restitution, but justice, and final closure from a harm rooted in ignorance and deception that should have never begun.

*"For the Lord loves justice and will not forsake His faithful ones."* - Psalm 37:28

Respectfully and formally submitted,

Israel Malachi Zickafoose, Pro Se
813-739-9190
israelz0404@gmail.com
**Date:**