## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ISRAEL MALACHI ZICKAFOOSE,

               Plaintiff,

    v.

UPSTART NETWORK, INC; DAVE
GIROUARD; FMA ALLIANCE, LTD,

               Defendants.

Case No. 8:25-cv-01280-WFJ-AAS

## DEFENDANT UPSTART NETWORK, INC.'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant Upstart Network, Inc. ("Upstart"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves for entry of an order dismissing with prejudice the Amended Complaint [ECF No. 47] filed by Plaintiff Israel Malachi Zickafoose ("Plaintiff").

## I.    INTRODUCTION

Plaintiff's Amended Complaint is equally as defective as his original complaint and is still based on the proposition that Plaintiff talismanically relieved himself of liability on his loan by writing, "**W/O Recourse**," next to his signature on the promissory note underlying the loan.[1]  Plaintiff's attempt to invoke twisted

---

[1] As detailed *infra*, Plaintiff has abandoned all claims against Upstart's CEO, David Girouard.

interpretations of Article 3 of the Uniform Commercial Code ("UCC") does not withstand scrutiny, and there is no other authority that remotely supports Plaintiff's fanciful theory.  Although he tries to distance himself from it in the Amended Complaint, the gravamen of Plaintiff's claims is plainly an attempt to invoke the universally-discredited "vapor money" theory to avoid liability on his loan.

Against that backdrop, Plaintiff asserts claims under the Fair Debt Collection Practices Act ("FDCPA") (Count I), under the Fair Credit Reporting Act ("FCRA") (Count II), for breach of contract (Count III), for fraud (Count IV), under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V), for invasion of privacy (Count VI), and under Article 3 of the UCC (Count VII).  Plaintiff's vapor money theory infects every one of these claims, and each claim also fails for additional reasons as detailed below.

Finally, the Court should not grant Plaintiff leave to amend.  He has amended once already, and any further amendment would be futile because Plaintiff has demonstrated that his lawsuit is dependent on the profoundly flawed vapor money theory.[2] There is no set of facts that Plaintiff can allege to avoid the debt he contractually bargained for.

---

[2] Plaintiff has not made proper service under FRCP 4(e), FRCP 4(h), or Florida Statute § 48.081 on Upstart.  However, because the Amended Complaint entirely fails to state cognizable claims for relief, Upstart has opted to move for dismissal under FRCP 12(b)(6) rather than FRCP 12(b)(5).

## II.    RELEVANT FACTS

Plaintiff concedes that he "executed and returned to Upstart Network, Inc, a written agreement for an unsecured personal loan in the principal amount of $10,000" (the "Note").  ECF No. 47 p. 2.  Plaintiff admits that the proceeds of the loan were then disbursed to his account.  *Id.* p. 3.  In reality, the loan was obtained through Upstart's digital lending platform, but was made by Cross River Bank.  ECF 47-1 p. 8 ¶ 1.  Upstart additionally has acted as servicer of the loan since its inception.  ECF 47-1 pp. 8, 11-12 ¶¶ 1, 13, 15; ECF 47 pp. 21, 30, 47.

The Note identifies Plaintiff by name as the customer obligated on the loan at issue.  ECF No. 47-1 p. 17.  In addition, the Note contains the following relevant provisions:

> **Assignment**.  I am not allowed to assign any of my obligations under this Note without your written permission.  I understand that you do not have to give me permission.  **I agree that you may assign or transfer this Note or any of your rights to another person or entity. You may take these actions without notice or consent from me.  Any sale or transfer of my Note does not affect my rights and duties under this Note**.

*Id.* p. 11 ¶ 12 (emphasis added).

> **Electronic    Communications;    Notices;    Contacting You**.   . . . **I agree that you (including any other owner or servicer of my loan) may contact me for any lawful reason, including for the collection of amounts owed to you. . . . You may contact me at such addresses or numbers (including cell phone numbers and landlines) as I may provide to you from time to time and you may use any means of communication, including regular mail, electronic mail, telephone, text message or other technology, to reach me.  I agree**

**that you may use automatic dialing and announcing devices which may play recorded messages.**

*Id.* pp. 11-12 ¶ 14 (emphasis added).[3]

The Note also contains an obligation for Plaintiff not to use the loan proceeds for certain purposes, ECF 47-1 p. 10 ¶ 8, an obligation to pay an origination fee and late payment and return ACH/check fees, *id.* p. 9 ¶ 8, a prohibition on Plaintiff's ability to assign the Note, *id.* p. 11 ¶ 8, and an obligation on the part of Plaintiff to pay for collection costs. *Id.* pp. 10-11 ¶ 9. The Note also provides that failure to or delay in exercising the lender's rights under the Note "will not waive those rights." ECF No. 47-1 p. 11 ¶ 11.

The premise of Plaintiff's entire lawsuit is that he purportedly relieved himself of liability on the Note pursuant to Article 3 of the UCC by endorsing the Note at the time of its execution "**W/O Recourse**." *See, e.g.*, ECF No. 47 p. 12.

The Amended Complaint goes on to allege that, following origination, Upstart failed to properly and/or accurately respond to certain debt validation letters while Upstart continued collection efforts on the Note. (*Id.* pp. 3-5). Plaintiff also alleges that Upstart entered into a "written agreement . . . to cease collection efforts, as expressly confirmed in an email dated April 14, 2025." *See id.* The April 14, 2025,

---

[3] The Note also contains a choice of law provision designating the laws of New Jersey as the operative laws governing the contract. ECF No. 47-1 p. 12 ¶ 16. Therefore, Upstart does not concede that Florida law applies in this case and expressly reserves the right to claim that New Jersey law applies if this matter proceeds beyond this motion. However, for purposes of this motion only, Upstart will assume that Florida law applies.

email itself—which is attached to the Amended Complaint, ECF No. 47-1 p. 30—states that Plaintiff's account "has been updated to reflect your request to cease all future calls regarding your account," and it goes on to expressly advise that Plaintiff would still receive certain emails and other required notices. *Id.* The Amended Complaint also alleges that Plaintiff disputed the accuracy and legitimacy of the loan to credit reporting agencies, which then affirmed the validity of the debt. (*Id.* p. 5).[4]

Based on these allegations—which establish only that Plaintiff contracted for a loan and received proceeds of that loan, and that Upstart attempted to collect repayment as permitted by the loan agreement—Plaintiff brings claims against Upstart for violations of the FDCPA, FCRA, FDUTPA, and UCC, and breach of contract, fraudulent misrepresentation, and invasion of privacy.

## III.    LEGAL ARGUMENT

FRCP 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive an FRCP 12(b)(6) motion, a litigant must plead sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not require detailed

---

[4] The body of the Amended Complaint ends with a lengthy section demanding discovery from Upstart, and seeking an adverse inference if such discovery is not produced. *See* ECF No. 47 pp. 7-10. Such requests for discovery—not to mention a request for sanctions for failure to comply with discovery—are inappropriate prior to conferral under Federal Rule of Civil Procedure 26(f), *see* Fed. R. Civ. P. 26(d)(1), which has not yet occurred in this case. *See Garza v. Cap. One, N.A.*, 2024 WL 3910817, at *2 (M.D. Fla. Aug. 22, 2024).

factual allegations but demands more than an unadorned accusation.  *Id.* A litigant's complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  At the dismissal stage, a district court should limit its "considerations to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed."  *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (emphasis added).  Mere legal conclusions—even if couched as factual accusations—are not to be taken as true. *Iqbal*, 556 U.S. at 678.

### A.    Underlying All Of Plaintiff's Claims Is The Universally-Rejected Sovereign Citizen "Vapor Money" Theory.

The premise underlying every one of Plaintiff's claims is that he was able to obtain and keep the proceeds of the loan at issue, without incurring any liability to repay the loan, simply by writing "**W/O Recourse**" below his name when he executed the Note governing the loan.  *See* ECF No. 47 p. 9 (alleging that "the **'W/O Recourse'** indorsement is not only material, but dispositive.  **It determines the enforceability of the note.**").[5]  Under Plaintiff's theory, the lender's acceptance of such an endorsed Note without objection, together with the lender's disbursement of

---

[5] In reality, as demonstrated by the Note attached to Plaintiff's Amended Complaint, there is no such language next to Plaintiff's signature.  *See* ECF No. 47-1 p. 17.  In fact, given that Plaintiff signed the Note electronically, there would have been no way for him to have written or otherwise added "W/O Recourse," or any other additional language, next to his signature.  However, because Plaintiff's position would fail even had he added such language, Upstart will assume for purposes of this motion only that such language appears on the Note.

loan proceeds to Plaintiff, transformed the Note into a negotiable instrument, rendering it essentially a cash equivalent that satisfied or discharged any obligation on the part of Plaintiff to repay the loan.  (Am. Compl. pp. 2-3).

Plaintiff's allegations are frivolous.

### 1.    Neither The UCC Nor Any Other Authority Supports Plaintiff's Theory.

There is, of course, no authority to support the proposition that a borrower writing "without recourse" on a promissory note at the time the borrower signs it relieves the borrower of his obligation to repay the loan made pursuant to the note.

Plaintiff tries to support his position by attempting to invoke various provisions of Article 3 of the UCC, but his position breaks down on multiple levels. Initially, an essential assumption underlying Plaintiff's position is that the Note constitutes a "negotiable instrument," which Plaintiff contends makes the Note subject to Article 3 of the UCC.  A "negotiable instrument," however, is defined, in relevant part, as an unconditional promise to pay money, which "[d]oes not state any other undertaking or instruction by the person promising . . . payment to do any act in addition to the payment of money," with the exception of certain statutorily defined undertakings.  Fla. Stat. § 673.1041(1)(c).[6]

Here, the Note contains a number of undertakings on the part of Plaintiff that

---

[6] Chapter 673 contains Florida's version of the UCC.

do not fall within these exceptions, such as an obligation not to use the loan proceeds for certain purposes, ECF 47-1 p. 10 ¶ 8, an obligation to pay an origination fee and late payment and return ACH/check fees, *id.* p. 9 ¶ 8, a prohibition on Plaintiff's ability to assign the Note, *id.* p. 11 ¶ 8, and an obligation for Plaintiff to pay for collection costs. *Id.* pp. 10-11 ¶ 9. These additional undertakings prohibit the Note from being considered a negotiable instrument. *See, e.g.*, *Ford v. Marquesas Cap. Partners, LLC*, 2025 U.S. Dist. LEXIS 45861, *5 (M.D. Fla. Mar. 13, 2025) ("[B]ecause the notes limit assignability, the notes are not negotiable instruments controlled by Section 673"); *GMAC v. Honest Air Conditioning & Heating, Inc.*, 933 So. 2d 34, 36-37 (Fla. App. 2006) ("[T]he RISC in this case creates a series of obligations upon the vehicle purchaser, requiring the buyer . . . 'to pay the creditor the amount financed and finance charge according to the payment schedule'. . . . The RISC also obligates the buyer to pay fees for late payment or dishonored checks. All of these undertakings bring the RISC within the exclusionary language of section 673.1041(1)(c), which provides that a negotiable instrument 'does not state any other undertakings' in addition to the payment of money."). Thus, because the Note is not a negotiable instrument, all of the various UCC Article 3 provisions on which Plaintiff relies to support his theory are inapplicable. Plaintiff's theory fails in its entirety for that reason alone.

Even if the Note somehow could be considered a negotiable instrument, the

most critical component of Plaintiff's theory is that he allegedly indorsed the Note "without recourse."  Plaintiff is relying on the provision of UCC Article 3 that provides: "If an indorsement states that it is made 'without recourse' or otherwise disclaims liability of the indorser, the indorser is not liable under subsection (1) to pay the instrument." Fla. Stat. § 673.4151(2).  Plaintiff, however, is not—and could never be—an "indorser."  "The term 'indorser' means a person who makes an indorsement." Fla. Stat. § 673.2041(2).  "Indorsement," in turn, "means a signature, *other than that of a signer as maker*, drawer, or acceptor. . . .  Fla. Stat. § 673.2041(1) (emphasis added).  A "maker" is defined as "a person who signs or is identified in a note as a person undertaking to pay." Fla. Stat. § 673.1031(1)(e).

Here, the person who signed and is identified in the Note as the person undertaking to pay is ***Plaintiff***, ECF No. 47-1 p. 17, and thus ***Plaintiff*** is the "maker" of the Note under Fla. Stat. § 673.1031(1)(e).  As the "maker" of the Note, Plaintiff is precluded from being able to make an indorsement of the Note per Section 673.2041(1).  For that reason as well, Plaintiff's entire theory—which is premised on his purported "indorsement" of the Note—fails on its face.

Still another critical flaw in Plaintiff's analysis is that he claims to have engaged in "negotiation" of the Note "within the meaning of UCC § 3-201." ECF No. 47 p. 3.  "Negotiation," however, "means a transfer of possession, whether voluntary or involuntary, of an instrument by a person ***other than the issuer*** to a

person who thereby becomes its holder." Fla. Stat. § 673.2011(1). An "issuer," in turn, is defined as "*a maker* or drawer of an instrument." Fla. Stat. § 673.1051(3). Here, once again, Plaintiff was the "maker" of the Note, and thus was also the Note's "issuer." As the "issuer," Plaintiff was unable to "negotiate" the Note under the meaning of Fla. Stat. § 673.2011(1).

Thus, Plaintiff's ludicrous theory finds no support in UCC Article 3 (or any other legal authority) and, as a result, the Amended Complaint should be dismissed.

### 2. *Plaintiff's Theory Is An Iteration Of The Universally-Discredited "Vapor Money" Theory.*

The reality is that Plaintiff—try to disavow it as he might—is espousing the sovereign citizen "vapor money" or "redemptionist" theory, under which borrowers declare themselves relieved of liability on a loan by purportedly transforming the promissory note underlying the loan into legal tender that they claim serves as the loan's repayment.[7] Courts have consistently rejected virtually identical allegations

---

[7] "The essence of the 'vapor money' theory is that the promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *Price v. Lakeview Loan Servicing, LLC*, 2021 U.S. Dist. LEXIS 79328, at *9 (M.D. Fla. Apr. 26, 2021) (citing *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010)). This theory has been dismissed as "patently frivolous" by federal district courts in this circuit and across the country. *See e.g.*, *Winsey v. Nationstar Mortg. LLC*, 2017 U.S. Dist. LEXIS 100731, at *9 (M.D. Fla. June 29, 2017) (dismissing vapor money claims as "utterly meritless"); *Johnson v. Deutsche Bank Nat'l Tr. Co.*, 2009 U.S. Dist. LEXIS 84092, at *11 (S.D. Fla. June 30, 2009) (finding complaint based on vapor money theory "lacks legal merit and should be dismissed"); *Sanford v. Robins Fed. Credit Union*, 2012 U.S. Dist. LEXIS 165230, at *10 (M.D. Ga. Nov. 20, 2012) (vapor money theory is "equal parts revisionist legal history and conspiracy theory" and dismissing plaintiff's complaint for failing to state actionable claim); *Carrington v. Fannie Mae*, 2005 U.S. Dist. LEXIS 31605, at *6 (E.D. Mich. Nov. 29, 2005) (recognizing that vapor money theory has been "universally rejected by numerous federal courts.").

to those of Plaintiff. *See e.g.*, *Kalpak v. EMC Mortg. Corp.*, 2011 U.S. Dist. LEXIS 75315, \*11-12 (M.D. Ga. Jun. 13, 2011) (rejecting "vapor money" theory, explaining that "allegations that . . . [plaintiffs'] obligation under the promissory note was discharged because the note was stamped 'Pay to the Order of . . . without recourse,' . . . are frivolous and nonsensical."); *Williams v. TD Auto Fin. LLC*, 2024 U.S. Dist. LEXIS 66450, \*6–7 (N.D. Ga. Apr. 11, 2024) ("Consistent with vapor money theory, Plaintiff believes he can legally discharge his debt by writing 'financial buzzwords' like 'Accepted for Deposit' or 'pay to the bearer' on a payoff quote and returning it to Defendant. . . .  Plaintiff's claims all rely on the vapor money theory, which courts find to be frivolous.") (citation omitted); *Baldwin v. Glob. Lending Servs., LLC*, 2025 U.S. Dist. LEXIS 93939, \*5–6 (W.D. Ok. May 16, 2025 ("The world would likely be a much different place if borrowers could send their bank a document similar to Plaintiff's indorsed draft and extinguish all of their outstanding debt.  But the world, and the law, does not work that way.  The Court, therefore, joins the host of other courts rejecting Plaintiff's 'vapor money' theory.").

Like Plaintiff here, borrowers attempting to avoid their debts through the vapor money theory frequently rely on the UCC, and courts have uniformly rejected these attempts. *See e.g.*, *Gerken v. Capital One Fin. Corp.*, 2024 U.S. Dist. LEXIS 216138, at \*4 n.1 (N.D.N.Y. Nov. 27, 2024) (concluding that plaintiff's vapor money theory was frivolous, and noting that "[h]allmarks of a sovereign citizen

pleading include, as is the case here, reliance on the UCC as well as attachments suggesting a bad-faith, unilateral effort to discharge debts."); *Baldwin*, 2025 U.S. Dist. LEXIS 93939, at *9 (rejecting plaintiff's attempt to "use Oklahoma's Uniform Commercial Code [] as a means to assert his 'vapor money' theory"); *Sumpter v. Navy Fed. Credit Union*, 2025 U.S. Dist. LEXIS 105482, at *5 (N.D. Ga. Apr. 21, 2025) (rejecting plaintiff's claim that he discharged his debt by "submit[ing] several negotiable instruments to Defendant which met the criteria set forth in the UCC" as meritless vapor money theory); *Anwar A. Aalaam v. Equifax Info. Servs., LLC*, 2025 U.S. Dist. LEXIS 26489, *2 (W.D.N.C. Feb, 13, 2025) (explaining that plaintiff "erroneously believes that he does not have to pay valid mortgage and other debts based on the widely discredited 'vapor money' theory and/or his contention that Article 3 of the UCC permits him to simply declare his debts discharged based on his 'tender' of so-called 'negotiable instruments.'"). The Court should likewise reject Plaintiff's reliance on the UCC here.

As detailed below, although Plaintiff's various claims fail for independent reasons, his frivolous vapor money theory also infects every one of his claims and requires dismissal of the Amended Complaint in its entirety.

## B.     The FDCPA Claim Fails Because Upstart Was Not A "Debt Collector."

Throughout the Amended Complaint, Plaintiff alleges that Upstart violated numerous provisions of the FDCPA, but "the FDCPA only applies to 'debt

collectors.'" *Olufemi v. Exclusive Ass'n Mgmt.*, 2024 U.S. App. LEXIS 3985, *8 (11th Cir. Feb. 21, 2024) (citing *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012)).  "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C.A. § 1692a(6).  It is Plaintiff's burden to allege facts that plausibly demonstrate that Upstart is a debt collector.  *Darrisaw v. Penn. Higher Educ. Assistance Agency*, 949 F.3d 1302, 1308 (11th Cir. 2020).

Importantly, "creditors and servicers are not typically subject to the FDCPA.  . . . Indeed, the FDCPA expressly states that the term 'debt collector' does *not* include 'any person collecting or attempting to collect any debt [such as a loan servicer] . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.'" *Hendrix-Smith v. JPMorgan Chase Bank N.A.*, 2021 U.S. App. LEXIS 26871, *7 (11th Cir. Sept. 7, 2021) (quoting 15 U.S.C. § 1692a(6)(F) (alteration in original)).  *Accord Lewis v. Navient Corp.*, 2020 U.S. Dist. LEXIS 256377, at **12–13 (N.D. Ga. Apr. 2, 2020) ("[I]t is well established that creditors and loan servicers are not debt collectors under the FDCPA, unless they acquired the debt after default for purposes of debt collection and otherwise meet the statutory definition of 'debt collector' (including that they

are in the principal business of debt collection")); *Fitzgerald v. Mercedes-Benz Fin. Servs. USA, LLC,* 2024 U.S. Dist. LEXIS 122200, at *21 (M.D. Fla. July 11, 2024) ("a loan servicing company that becomes the servicer before the loan at issue was in default is not a 'debt collector' under the FDCPA.") (citing *Mathieson v. Wells Fargo Bank, NA,* 524 F. Supp. 3d 1246, 1259 (M.D. Fla. 2021)).

Here, Plaintiff alleges no facts to demonstrate that Upstart meets the definition of debt collector.  In fact, fairly read, the Amended Complaint, together with its exhibits, establish that Upstart has been servicing the loan at issue since its inception—*i.e.*, before the loan could have gone into default.  *See* ECF 47 pp. 1-7 (alleging that Upstart was involved with the subject loan from time of its origination through all alleged collection efforts); ECF 47-1 pp. 21, 30, 47 (repeatedly identifying Upstart as servicer of loan).  As the servicer of the loan from prior to the time of default, Upstart was not a "debt collector," and thus the FDCPA claim fails.

In addition, several aspects of the FDCPA claim allege liability based on Upstart's attempt to collect a loan that "presumes liability where none exists," and that is "an extinguished and invalid obligation."  ECF No. 47 p. 6.  These allegations are derivative of Plaintiff's "vapor money" theory that he had no obligation to repay his loan, which is frivolous, and so these aspects of the claim fail for that reason too.

## C.    The FCRA Claim Fails On Multiple Grounds.

"The only [FCRA] private right of action consumers have against

furnishers"—like Upstart here—"is for a violation of § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018).

A critical element of a claim under Section 1681s-2(b) is that a consumer reporting agency ("CRA") provide notice of the consumer's dispute to the furnisher. 15 U.S.C. § 1681s-2(b)(1). If a plaintiff fails to allege this element, the claim requires dismissal. *See e.g.*, *Hunt v. JPMorgan Chase Bank, N.A.*, 770 Fed. Appx. 452, 457 (11th Cir. Apr. 25, 2019) (affirming dismissal of FCRA claim against furnisher because plaintiff "never alleged that . . . JPMC received notification from the CRAs of such a dispute"); *accord Brooks v. Westlake Portfolio Mgmt.*, 2025 U.S. Dist. LEXIS 112998, *10 (N.D. Ga. Jun. 12, 2025); *Harris v. Guild Mortg. LLC*, 2023 U.S. Dist. LEXIS 106287, *7 (N.D. Ga. Jun. 20, 2023).

That is precisely the case here, where Plaintiff has not alleged that Upstart received notice of any dispute from a CRA of his alleged dispute. Therefore, as in the above-cited cases, Plaintiff's FCRA claim should be dismissed.

An separate ground for dismissal of the FCRA claim is that Plaintiff has not alleged that Upstart furnished any inaccurate or incomplete information to any CRA, which is another indispensable element of the claim. *See Leones v. Rushmore Loan Mgmt. Servs. LLC*, 749 Fed. App'x. 897, 901 (11th Cir. 2018) (Section 1681s-2(b) claim "cannot survive a motion to dismiss without some supportable allegation that

the reported information is inaccurate or incomplete").

Here, Plaintiff's theory of inaccuracy is premised entirely on the claim that his obligation on the loan at issue had been extinguished (ECF 47 pp. 10-11), which is incorrect because it is based on his frivolous vapor money theory. Because Plaintiff has not plausibly alleged any inaccuracy in the information Upstart furnished to the CRAs, his claim fails on its face for that reason as well. *See, e.g.*, *Sweeting v. Ga. United Credit Union*, 2025 U.S. Dist. LEXIS 99988, *8 (N.D. Ga. May 27, 2025) (dismissing Section 1681s-2(b) claim because "Plaintiff fails to allege any plausible inaccuracy"); *Riley v. Maximus/Aidvantage*, 2025 U.S. Dist. LEXIS 122636, at *16 (N.D. Ga. Jun. 27, 2025) (same).

### D.     The Breach Of Contract Claim Is Also Premised On Plaintiff's Frivolous Vapor Money Theory.

Plaintiff's breach of contract claim is also facially deficient because the only alleged breach is that Upstart disregarded the purported contract that he believes he created by writing "W/O Recourse" on the Note. ECF No. 47 p. 11. But no additional or alternate contract was created. First, the Note itself does not reflect the alleged "W/O Recourse" notation that Plaintiff claims he indorsed.[8] ECF No. 47-1 at 17. Second, the promissory note on its face reflects a valid and enforceable

---

[8] "[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) (internal citation omitted).

16

agreement—a loan in exchange for repayment—and for the many reasons stated above, a "W/O Recourse" signature does not alter that fact.  Because the breach of contract claim is entirely based on the discredited vapor money theory, it fails.

### E.    Plaintiff's Fraud Claim Fails Because The Amended Complaint Does Not Allege Any False Statements, Nor Any Reliance.

Plaintiff also asserts a meritless fraud claim, which requires him to sufficiently allege "a false statement concerning a material fact," as well as "consequent injury by the party acting in reliance on the representation."  *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (internal quotations omitted).  Plaintiff does not do so.

The alleged false statement that forms the basis for Plaintiff's fraud claim is, once again, based on the vapor money theory.  Thus, Plaintiff alleges that Upstart falsely asserted "that Plaintiff remained personally liable on a debt obligation that had been lawfully discharged through acceptance of a negotiable instrument indorsed '**W/O Recourse**.'"  ECF No. 47 p. 12.  Because the vapor money theory is invalid, it was not false for Upstart to state that Plaintiff still was personally liable on the loan at issue.  As such, Plaintiff has not alleged any false statement, and the fraud claim fails for that reason alone.[9]

---

[9] Although not clear what claim (if any) Plaintiff contends these allegations support, Plaintiff feigns confusion over the fact that Upstart at different times identified different creditors to him as the holder of his loan.  ECF No. 47 p. 6.  The Note, however, could not be clearer that the holder of the Note had the right to assign it to other parties without any notice to Plaintiff.  *Id.* p. 11 ¶ 12.  Because transfer of the loan to other holders was pursuant to this clear contractual right, which was clearly disclosed to Plaintiff, there can be no liability on Upstart based on these allegations.

In addition, even assuming Upstart's statement was somehow false, Plaintiff does not allege that he relied on the statement. The alleged statement (that Plaintiff was liable on the loan) necessarily had to have been made ***after*** Plaintiff already obtained the loan—thus, Plaintiff cannot claim that he relied on the alleged false statement in entering into the loan transaction. Nor has he alleged reliance in any other way on the alleged false statement. For that reason as well, the fraud claim is facially defective. *See e.g.*, *Kendell v. Trusted Rate Inc.*, 2025 U.S. Dist. LEXIS 108938, *10 (M.D. Fla. Jun. 9, 2025) (granting Rule 12(b)(6) motion on fraudulent misrepresentation claim because plaintiffs "simply have not alleged facts showing reliance on any of Defendant's alleged statements").[10]

### F.    Plaintiff May Not Assert An FDUTPA Claim Based On Alleged Collection Activity.

Plaintiff purports to assert an FDUTPA claim premised on Upstart "attempting to collect on a debt that had been lawfully discharged and for which no legal obligation remained." ECF No. 47 p. 13. This claim, too, fails as a matter of law.

"A violation of the FDUTPA has three elements: (1) an objectively deceptive

---

[10] As noted above, Plaintiff also alleges that Upstart made various inaccurate statements in its May 6, 2025, communication to Plaintiff. ECF 47 pp. 4-5. Even assuming that those statements were inaccurate, Plaintiff does not allege how those statements form the basis for liability against Upstart. To the extent Plaintiff is claiming that these statements comprise part of his fraud claim, his theory fails because these statements were made several months after Plaintiff entered into the loan at issue, and thus he cannot claim that he relied in any way on them.

act or unfair practice in the conduct of any trade or commerce; (2) that caused; (3) actual damages." *Lumpkin v. Am. Express Co.*, 2025 U.S. Dist. LEXIS 107983, *8–9 (M.D. Fla. Jun. 5, 2025).  Courts have repeatedly held that attempting to collect and collecting a debt do not constitute "trade or commerce" under the FDUTPA, as required to maintain a claim under the statute.  *See e.g.*,  *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1321 (S.D. Fla. 2012) (holding that debt collection activities are not trade or commerce because they are "not an attempt to advertise, solicit, provide, offer, or distribute any good or services or a thing of value, so FDUTPA does not apply"); *accord Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1373 (S.D. Fla. 2017); *Benjamin v. CitiMortgage, Inc.*, 2013 U.S. Dist. LEXIS 64515, at *11 (S.D. Fla. May 6, 2013); *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1371–77 (S.D. Fla. 2010); *Trent v. Mortg. Electronic Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007); *State v. Shapiro & Fishman, LLP*, 59 So.3d 353, 355–57 (Fla. 4th DCA 2011); *Law Office of David J. Stern, P.A. v. State*, 83 So.3d 847, 849–50 (Fla. 4th DCA 2011).

Because Plaintiff's FDUTPA allegations are premised exclusively on collection activity, which does not constitute "trade or commerce" as the above-cited cases establish, Plaintiff's FDUTPA claim fails on that basis alone.

Even if the FDUTPA claim applied to Upstart's collection activity (which it does not), the only basis on which Plaintiff alleges this activity was deceptive or

unfair is that Plaintiff allegedly did not owe on the loan at issue because it purportedly had been discharged. But again, Plaintiff's contention is based wholly on his vapor money theory. Because the vapor money theory is meritless, Plaintiff in fact still was liable on the loan at issue at the time of Upstart's alleged collection efforts, and thus Upstart did nothing deceptive or unfair when it tried to collect.

### G. Plaintiff's Invasion-Of-Privacy Claim Fail Because Plaintiff Expressly Consented To Upstart's Communications.

Plaintiff's "invasion of privacy" claim should also be dismissed. Florida recognizes three categories of privacy torts. *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). Although Plaintiff does not expressly state which category he is asserting, it appears to be "intrusion—physically or electronically intruding into one's private quarters." *Id.* "To constitute an invasion of privacy, the intrusion must be highly offensive to a reasonable person." *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309 (M.D. Fla.). An act will satisfy this standard if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Ponton v. Scarfone*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985); *see also Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991). Courts often look to the outrageousness standard of intentional infliction of emotional distress to inform the invasion of privacy standard. *See e.g.*, *Stoddard*, 573 So. 2d at 1062.

In addition, Florida follows the Restatement (Second) of Torts for the tort of intrusion upon seclusion. *See e.g.*, *W.W. v. Orlando Health, Inc.*, 2025 U.S. Dist. LEXIS 40038, *27 (M.D. Fla. Mar. 6, 2025); *Duncan v. NCS Pearson, Inc.*, 2023 U.S. Dist. LEXIS 216521, *9 (S.D. Fla. Oct. 10, 2023); *Sutter v. Hilton Garden Inns Mgmt., LLC*, 2017 U.S. Dist. LEXIS 33719, *4 (M.D. Fla. Mar. 9, 2017). The Restatement provides that consent is a defense to an intrusion-upon-seclusion claim. *See* Restatement (Second) of Torts § 892A (1979) ("One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it.").

Plaintiff alleges that Upstart invaded his privacy because, after "lawful notice terminating communication rights, Upstart or its agents initiated repeated contact, including through digital and automated means." ECF No. 47 p. 13. But, as set forth above, under the Note, Plaintiff "agree[s] that you (including any other owner or servicer of my loan) may contact me for any lawful reason, including for the collection of amounts owed to you." ECF No. 47-1 p. 11-12 ¶ 14. Because Plaintiff consented to the communications he allegedly received, they cannot form the basis for an invasion-of-privacy claim. *See e.g.*, *Barnett v. Bank of Am., N.A.*, 2021 U.S. Dist. LEXIS 101171, at 18–22 (W.D.N.C. May 28, 2021) (applying Restatement (Second) of Torts § 892A, and holding that borrower's intrusion upon seclusion claim based on creditor's collection calls failed as matter of law when borrower

consented to such calls at time of credit application by providing creditor his phone number).

Nor can Plaintiff save his claim by alleging that he provided "lawful notice terminating communication rights." ECF No. 47 p. 13. Initially, it is not entirely clear what legal basis Plaintiff relies on for his contention that he lawfully terminated communication rights. It appears to be based, at least in part, on various "cease and desist" requirements under the FDCPA. *See* ECF No. 47 pp. 4-6. As explained above, however, the FDCPA—including its cease-and-desist provisions—are inapplicable because Upstart is not a "debt collector" under the FDCPA. *See, e.g.*, *Smith v. Upstart Network, Inc.*, 2023 U.S. Dist. LEXIS 111635, *25 (N.D. Ga. Jun. 27, 2023) (dismissing FDCPA alleging that "Defendant violated a cease and desist sent to Defendant . . . by continuing to send correspondence to Plaintiff," because plaintiff failed to allege that defendant was "debt collector").

Plaintiff also alleges that Upstart entered into a "written agreement . . . to cease collection efforts, as expressly confirmed in an email dated April 14, 2025." *See* ECF No. 47 p. 14. The April 14, 2025, email, however—which is attached to the Amended Complaint, ECF No. 47-1 p. 30—is not a binding agreement, nor even a blanket commitment, on the part of Upstart to cease collection efforts. Instead, the email merely states that Plaintiff's account "has been updated to reflect your request to cease all future ***calls*** regarding your account," and it goes on to expressly advise

that Plaintiff would still receive certain emails and other required notices.  *Id.* (emphasis added).[11]  Plaintiff does not allege that he received any ***calls*** from Upstart after April 14, 2025, and instead the communications he alleges are limited to "emails, letters, automated text messages, and account notifications."  (ECF No. 47-1 p. 3).

Moreover, the fact that Upstart may have voluntarily accepted Plaintiff's request to stop making calls does not waive Upstart's contractual right to communicate with him in any of the ways permitted by Paragraph 14 of the Note. The Note is clear in Paragraph 11 that failure to or delay in exercising the lender's rights under the Note "will not waive those rights."  ECF No. 47-1 p. 11.  Nor did Plaintiff have any ability to unilaterally revoke the consent to communications that he provided under Paragraph 14 of the Note.  *See Medley v. Dish Network, LLC*, 958 F.3d 1063, 1070 (11th Cir. 2020) (rejecting borrower's claim that she had ability to unilaterally revoke consent to be called that she provided in consumer finance agreement, explaining: "common law contract principles do not allow unilateral revocation of consent when given as consideration in a bargained-for

---

[11] Insofar as the allegations of the Amended Complaint are inconsistent with the actual content of the April 14, 2015, email, the contents of the email controls.  *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) ("If an exhibit attached to a complaint contradicts the allegations about the exhibit set forth in the complaint itself, the exhibit controls.").

agreement.").

## H.    The Complaint Fails To Allege Any Violation Of The UCC.

Plaintiff also asserts a vague claim directly under the UCC itself.  For the reasons discussed above in Section A(1) *supra*, the UCC is inapplicable to the Note because it is not a negotiable instrument, and even if it were, Plaintiff's theory that he "indorsed" and "negotiated" the Note, and thereby relieved himself of liability, is frivolous.

## I.    The Court Should Not Give Plaintiff Another Opportunity To Amend.

Plaintiff already has amended once, and he still has not asserted any meritorious claims.  Given that both his original and amended claims were all premised on the vapor money theory, it seems clear that any further amendment will continue to be dependent on that untenable theory.  As such, further amendment would be futile and should not be granted.  *Dean v. Roku, Inc.*, 2025 U.S. Dist. LEXIS 153194, *21 (M.D. Fla. Aug. 8, 2025) ("[T]he Court will not permit more opportunities to replead when any further amendment would be futile.").

## J.    The Amended Complaint Fails To Allege Facts Implicating Dave Girouard In Misconduct.

Plaintiff appears to have abandoned the claims he asserted in the original complaint against Upstart's CEO David Girouard, given that the Amended Complaint asserts no claims against Mr. Girouard (nor even mentions his name).  In

24

any event, any such claims against Mr. Girouard individually would fail for all the same reasons set forth herein.  In addition, the Amended Complaint contains no facts alleging that Mr. Girouard engaged in any misconduct, either as an agent of Upstart or in his individual capacity.  Indeed, as noted above, the Amended Complaint does not even mention him.  Therefore, the Court also should dismiss Mr. Girouard from this case with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Upstart respectfully requests that this Court dismiss Plaintiff's Amended Complaint with prejudice, and grant Upstart such other relief as the Court deems proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Upstart and Girouard certify:    A) they, through undersigned counsel, conferred with Plaintiff before filing this motion; B) Plaintiff did not agree on the resolution of all or part of this motion; and C) this motion is opposed, and the conferral occurred via telephone on June 12, 2025.

Dated: August 15, 2025                    Respectfully Submitted,

                                          GREENBERG TRAURIG, LLP

                                          */s/ Eva M. Spahn*

                                          EVA M. SPAHN, ESQ.
                                          Florida Bar No. 0092063
                                          GREENBERG TRAURIG, P.A.
                                          333 S.E. 2nd Avenue, Suite 4400
                                          Miami, Florida  33131
                                          P:  305-579-0500
                                          F: 305-579-0717
                                          Email: Eva.Spahn@gtlaw.com

                                          JOEL E. TASCA, ESQ.*
                                          Nevada Bar No. 14124
                                          ALIX R. GOLDSTEIN, ESQ..*
                                          Nevada Bar No. 16540
                                          *admitted pro hac vice
                                          10845 Griffith Peak Drive, Suite 600
                                          Las Vegas, Nevada  89135
                                          P:  702-792-3773
                                          F:  702-792-9002
                                          Email: joel.tasca@gtlaw.com
                                          Email: alix.goldstein@gtlaw.com

                                          *Attorneys for Defendant,*
                                          *UPSTART NETWORK, INC. AND*
                                          *DAVE GIROUARD*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

*/s/ Eva M. Spahn*

Eva M. Spahn