## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ISRAEL MALACHI ZICKAFOOSE,**

      **Plaintiff,**

**v.**                                                          **Case No. 8:25-cv-1280-AAS**


**UPSTART NETWORK, INC; DAVE
GIROUARD; FMA ALLIANCE, LTD,**

      **Defendants.**

_____/

## <u>ORDER</u>

Defendant Upstart Network Inc., (Upstart) moves to dismiss the Plaintiff Israel Malachi Zickafoose's amended complaint (Doc. 48). Mr. Zickafoose opposes the motion. (Doc. 49). On September 19, 2025, the case was stayed pending the resolution of Upstart's motion to dismiss. (Doc. 54). David Girouard was terminated as a party on October 4, 2025, and the amended complaint does not assert any claims against Mr. Girouard. (Doc. 47).

## I.    BACKGROUND

On August 4, 2025, Mr. Zickafoose filed an amended complaint against Upstart. (Doc. 47). The complaint alleges Upstart committed willful violations of the Fair Debt Collection Practices Act (FDCPA), the Fair Credit Reporting

Act (FCRA), the Uniform Commercial Code (UCC), breach of contract, fraudulent misrepresentation, and invasion of privacy. (Doc. 47, p. 1).

These allegations stem from a written agreement for an unsecured $10,000 personal loan that Mr. Zickafoose obtained through Upstart's digital lending platform. (Doc. 47-1, p. 8). The parties agree that the loan proceeds were disbursed to Mr. Zickafoose's account. (Doc. 47, p. 3). The central dispute underlying the claims is whether Mr. Zickafoose discharged his liability under the loan by "affix[ing] a qualified indorsement, clearly stating 'W/O Recourse' above his autograph signature." (Doc. 47, p. 2). Mr. Zickafoose contends that his indorsement created a counteroffer, which Upstart accepted by disbursing the loan proceeds. (Doc. 47, p. 3). Based on his position that a new contract was created in which Mr. Zickafoose owed no legal obligation to repay, he argues Upstart committed various violations by attempting to collect on the debt.

Upstart contends that each of Mr. Zickafoose's claims fails and moves to dismiss Mr. Zickafoose's complaint with prejudice. (Doc. 48, p. 2). It contends the "lawsuit is dependent upon the profoundly flawed vapor money theory" and that "[t]here is no set of facts that Plaintiff can allege to avoid the debt he contractually bargained for." (Doc. 48, p. 2).

2

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be attacked—and dismissed—for "failure to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion to dismiss, a court applies the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, review is generally limited to the four corners of the complaint. When reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Pro se plaintiff's complaints are liberally construed, but the court will not "serve as de facto counsel" or "rewrite an otherwise deficient pleading." *Albert v. Discover*

3

*Bank*, No. 24-10224, 2025 WL 1514052 (11th Cir. May 28, 2025) (citing *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

## III.   ANALYSIS

The widely rejected "vapor money" theory underlies Mr. Zickafoose's claims. The vapor money theory "derives from the sovereign citizen movement." *Price v. Lakeview Loan Servicing, LLC*, No. 219CV655FTM29MRM, 2021 WL 1610097 at *3 (M.D. Fla. Apr. 26, 2021), *aff'd*, No. 21-11806, 2022 WL 896816 (11th Cir. Mar. 28, 2022). "The essence of the 'vapor money' theory is that the promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *Id.* at *4 (citation omitted). Federal courts across the country have held "[t]he 'vapor money' theory of recovery is patently frivolous no matter how disguised under a legitimate cause of action." *Adams v. Partners*, No. 24-CV-943-PP, 2025 WL 101615 at *5 (E.D. Wis. Jan. 15, 2025) (citation omitted); *see e.g.*, *Price* 2022 WL 896816 at *3 (supporting that claims founded on the vapor money theory are nonsensical, fundamentally misunderstand how negotiable instruments work, and are routinely dismissed by federal courts as frivolous). The complaint could be dismissed simply because it is predicated on the "patently frivolous" vapor money theory. Nevertheless, this order will address whether each of Mr. Zickafoose's

individual claims state a claim for relief.

### A. Count I – Violation of the Fair Debt Collection Practices Act

In Count I, Mr. Zickafoose alleges Upstart committed four violations of the FDCPA. Upstart argues Count I should be dismissed because the FDCPA applies to "debt collectors" and Upstart is not a "debt collector" under the meaning of the FDCPA. (Doc. 48, p. 13). In response, Mr. Zickafoose argues that Upstart is a debt collector because Upstart "repeatedly engaged in post-dispute collection efforts, [and] the record itself proves that [Upstart] is a debt collector under the statute." (Doc. 49).

As a threshold matter, for Count I to state a claim of relief that is plausible on its face, the FDCPA must be applicable to Upstart. The parties both agree the FDCPA applies to debt collectors. The parties disagree on the meaning of "debt collector," specifically whether Upstart qualifies as a debt collector under the FDCPA. It is Mr. Zickafoose's burden to allege facts plausibly establishing that Upstart qualifies as a debt collector. *See Darrisaw v. Penn. Higher Educ. Assistance Agency*, 949 F.3d 1302, 1308 (11th Cir. 2020) (finding it was the plaintiff's burden to allege facts plausibly establishing that the defendant qualified as a debt collector).

"Whether a party is an FDCPA debt collector is governed by the statutory definition, not by any self-identification by the party." *Maddox v. Aldridge Pite,*

*LLP*, No. 23-12853, 2024 WL 1475463 at *2 (11th Cir. 2024). The FDCPA gives a special definition to "debt collector." The primary definition of a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). The FDCPA further defines "debt collector stating:

> the term does not include: (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692(a)(6)(f).

Mr. Zickafoose fails to state a claim under Count I because Upstart is not a "debt collector" under the FDCPA. The record reveals Upstart is the loan servicer and has been since the loan's inception. (Docs. 47-1, pp. 8, 11, 12; 48, p. 3). Cross River Bank made the loan through Upstart's digital lending platform. (Docs. 47-1, p. 8; 48, p. 3). A loan servicer is not a debt collector if the debt was not in default at the time the entity became the servicer. *See Mathieson v. Wells Fargo Bank, N.A.*, No. 8:20-CV-2728-WFJ-SPF, 2021 WL

6

4078140 at *7 (M.D. Fla. Sept. 8, 2021) (stating, "It is well-settled law that if [the entity] was servicing the loan before the . . . default . . . [the entity] was not a "debt collector" at that time"); *Fenello v. Bank of Am., NA*, 577 F. App'x 899, 902 (11th Cir. 2014) (affirming the district court's conclusion that an entity was not a debt collector because its debt collection activities involved a debt that was not in default at the time it became the servicer).

Despite Mr. Zickafoose's argument he "expressly alleges Upstart is acting within the FDCPA's scope," (Doc. 49, p. 5) Mr. Zickafoose has not met his burden to allege facts plausibly establishing that Upstart qualifies as a debt collector under the FDCPA. *See Iqbal*, 556 U.S. at 679 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation") (quotation and citation omitted). Therefore, the allegations in Count I do not state a claim under the FDCPA. Count I is **DISMISSED**.

## B. Count II – Violation of Fair Credit Reporting Act

In Count II, Mr. Zickafoose alleges Upstart violated 15 U.S.C. Section 1681s-2(b) of the FCRA. (Doc. 47).  Mr. Zickafoose contends that Upstart violated Section 1681s-2b "by continuing to furnish information about an unvalidated and legally disputed debt to . . . credit reporting agencies, even

after [Mr. Zickafoose's] lawful demand for validation" and after any obligation under the contract was extinguished. (Doc. 47, p. 10). Mr. Zickafoose also alleges that, despite actual knowledge of the dispute, Upstart failed to conduct a reasonable investigation and continued to furnish the disputed credit information in violation of the FCRA. (Doc. 47, p. 11). Upstart argues the claim requires dismissal because Mr. Zickafoose failed to allege a required element to state a claim under Section 1681s-2b. (Doc. 48).

Under Section 1681s-2a, the FCRA prohibits furnishers of credit information from providing false information. 15 U.S.C. § 1681s-2a; *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009). However, Section 1681s-2a explicitly bars private suits for an alleged violation. 15 U.S.C. §1681s-2d; *Peart* 345 F. App'x at 386. Therefore, Mr. Zickafoose cannot state a claim under Section 1681s-2a.

The FCRA permits a private right of action under Section 1681s-2b. *Id*. This Section requires furnishers of credit information to investigate the accuracy of the furnished information upon receiving notice of dispute "*from a consumer reporting agency*." *Peart* 345 F. App'x at 386 (citing 15 U.S.C. § 1681s-2(b)(1) (emphasis added); *see also Hunt v. JPMorgan Chase Bank, Nat'l. Ass'n*, 770 F. App'x 452, 457 (11th Cir. 2019) (finding the plaintiff failed to state an FCRA claim "because he never alleged . . . [the furnisher] received

8

notification from the [credit reporting agency] of such a dispute").[1]  Thus, after a furnisher's responsibilities are triggered "[u]nder 15 U.S.C. § 1681s-2b, Plaintiff must allege that the defendants failed to: (1) conduct an investigation regarding the disputed information; or (2) review all relevant information the consumer reporting agency (CRA) provided pursuant to § 1681i(a)(2) of the FCRA; or (3) report the results of the investigation to the CRA; or (4) modify, delete, or permanently block the reporting of an item of information that was disputed by a consumer but was inaccurate, incomplete, or unverifiable after any reinvestigation." *Okereke v. Experian Info. Sols., Inc.*, No. 8:18-CV-1347-T-24-AAS, 2018 WL 5631047 at *2 (M.D. Fla. Oct. 31, 2018) (citation omitted).

In Count II, Mr. Zickafoose first alleges Upstart "violated [Section 1681s-2(b)] by continuing to furnish information about an unvalidated and legally disputed debt to one or more credit reporting agencies." (Doc. 47, p. 10). Even accepting the statement as true and in the light most favorable to Mr. Zickafoose, this allegation does not state a cause of action under Section 1681s-2b. The FCRA prohibition on furnishers providing false information to credit agencies does not permit a private right of action. Further, Mr. Zickafoose does

---

[1] Specifically, to trigger a furnisher's responsibilities under 15 U.S.C. § 1681s-2(b), the furnisher must have received notice of a consumer's dispute from a CRA. *Boateng v. Equifax Info. Servs., LLC*, No. 1:22-CV-3396-VMC-CCB, 2024 U.S. Dist. LEXIS 10080 at *8 (N.D. Ga. Jan. 18, 2024).

not allege Upstart received notice of a consumer's dispute from a CRA to trigger Upstart's responsibilities as furnisher under Section 1681s-2b.

Mr. Zickafoose also alleges "[d]espite actual knowledge of the dispute, Upstart failed to conduct a reasonable investigation." (Doc. 47, p. 11). Again, Mr. Zickafoose does not allege Upstart received notice of a consumer's dispute from a CRA. Mr. Zickafoose only alleges Upstart received notice from himself, which does not trigger a furnisher's responsibility to conduct a reasonable investigation. Therefore, the allegations in Count II do not state a claim under 15 U.S.C. § 1681. Count II is **DISMISSED**.

## C. Count III – Breach of Contract

In Count III, Mr. Zickafoose alleges Upstart committed a "willful and material breach of contract by disregarding the lawful terms under which Plaintiff accepted and executed the loan agreement." (Doc. 47, p. 11). Mr. Zickafoose's main contention is that he modified Upstart's offer, thereby creating a counteroffer, to enter into a loan agreement by signing the loan agreement with the words "W/O Recourse." (Doc. 47, p. 11). Mr. Zickafoose claims that because the counteroffer was not rejected within a commercially reasonable time, the counteroffer "without recourse" was accepted by Upstart under UCC Sections 3-501(b)(2) and 3-603(a).

Upstart contends no alternative contract was created by writing the

words "W/O Recourse" on the note, and the claim fails because it is based on the discredited "vapor money theory." (Doc. 48, p. 16). Mr. Zickafoose replies denying the vapor money theory accusation and insisting "a qualified endorsement was used to make a counter-offer, and [Upstart] accepted it by its conduct by disbursing funds." (Doc. 49, p. 3) He claims Upstart is in breach of contract for attempting to collect on the disbursed funds. (Doc. 49, p. 3)

First, Mr. Zickafoose cannot state a claim for violating the UCC because "[t]he UCC, itself, is not the law of any state, nor is it federal law. In order to support a cause of action, a plaintiff must rely on a state's codification of the UCC." *Cumberbatch v. Capital One,* No. 8:25-CV-1703-TPB-CPT, 2025 WL 2373924 at *3 (M.D. Fla. Aug. 15, 2025) (citation omitted) (dismissing UCC claims to the extent they are asserted as independent claims for relief).

Relatedly, Mr. Zickafoose's claims hinge on the argument that because he indorsed the note without recourse, he is not liable for the loan proceeds. It appears Mr. Zickafoose relies on UCC § 3-415(b). *See* Doc. 49, p. 3 (Mr. Zickafoose stating, "a qualified indorsement was used to make a counter-offer, . . . the acceptance by conduct made the conditional terms binding . . . ignorance of the governing statutes is no excuse for breaking them"). Section 3-415(b) states "If an indorsement states that it is made "without recourse" or otherwise disclaims liability of the indorser, the indorser is not liable under subsection

11

(a) to pay the instrument." However, Mr. Zickafoose is not an indorser and did not make an indorsement. An indorser "means a person who makes an indorsement." UCC § 3-204(b). An indorsement means "means a signature, other than that of a signer as maker, drawer , or acceptor . . ." UCC § 3-204(a). Mr. Zickafoose is a "maker," because a maker is defined as "a person who signs or is identified in a note as a person undertaking to pay." UCC § 3-103(7); *see* Doc. 47-1, p. 8, 17 (showing Mr. Zickafoose's signature on the note that states "I promise to pay . . . the principal sum . . . with interest"). Therefore, Mr. Zickafoose did not modify the contract in a manner permitted under the UCC and cannot state a claim for breach under the UCC.

Second, to state a claim for breach of contract, "Florida law requires the plaintiff to plead and establish (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Marchisio v. Carrington Mortgage Services, LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019) (citation omitted). The necessary elements of a valid contract are an offer, acceptance, and consideration. *Britt Green Trucking, Inc. v. FedEx Nat. LTL, Inc.*, 511 F. App'x 848, 851 (11th Cir. 2013).

Mr. Zickafoose's breach of contract claim lacks legal merit because he asserts a variation of the "vapor money theory" disguised as a breach of contract claim. Relying on a misunderstanding of how negotiable instruments

12

work, Mr. Zickafoose accepted the proceeds of the loan and claims he owes no obligation because he indorsed without recourse. Besides the note itself not including the term "without recourse,"[2] Mr. Zickafoose cannot accept the benefits of a loan and reject the obligations by relying on inapplicable UCC provisions. *See Price* 2021 WL 1610097 at *3 (finding the amended complaint "utterly frivolous and lack[ing] any legal foundation because Plaintiff's arguments mirror other litigant's attempts to disavow legal obligations based on the vapor money theory).

Mr. Zickafoose's claims are an iteration of the vapor money theory. In attempting to discharge liability through various UCC provisions, Mr. Zickafoose's argument is the functional equivalent of attempting to create money by signing "W/O Recourse" to pay off the loan. *See e.g.*, *Price* 2021 WL 1610097 at *4 (rejecting, based on the vapor money theory, the plaintiff's attempt to discharge liability through a self-executed credit agreement he presented to the defendant); *Demmler v. Bank One NA*, No. 2:05-CV-322, 2006 WL 640499 at *4 (S.D. Ohio Mar. 9, 2006) (rejecting the assertion that when the plaintiff returned the promissory note to the bank he gave back the money

---

[2] The loan agreement, attached as Exhibit 1 of the amended complaint, does not reflect Mr. Zickafoose's claim that he signed the note "W/O Recourse." The language "without recourse" does not appear anywhere in the note or signature boxes. *See* Doc. 47-1.

and discharged his debt). Thus, Mr. Zickafoose's breach of contract claim lacks legal merit because it is an iteration of the rejected vapor money theory. Therefore, he cannot allege the existence of an alternative contract nor state a claim for breach of contract. Count III is **DISMISSED**.

### D. Count IV – Fraudulent Misrepresentation

In Count IV, Mr. Zickafoose alleges Upstart "is liable for fraudulent misrepresentation by knowingly and willfully asserting that [Mr. Zickafoose] remained personally liable on a debt obligation." (Doc. 47, p. 12). Upstart asserts the claim is meritless. (Doc. 48, p. 17).

Under Florida law, there are four elements to state a claim for fraudulent misrepresentation: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 106 (Fla. 2010) (citation and quotation omitted).

Mr. Zickafoose does not state a claim for fraudulent misrepresentation. First, Mr. Zickafoose does not sufficiently allege Upstart made a false statement concerning a material fact because, as stated above, Mr. Zickafoose did not discharge the debt through inapplicable UCC provisions. *See Iqbal*, 556 U.S. at 679 ("Although for the purposes of a motion to dismiss we must take

14

all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion    couched    as    a factual allegation'") (quotation and citation omitted).

Second, even if Upstart did make a false statement of material fact, Mr. Zickafoose does not allege a consequent injury by acting in *reliance* on the representation. To the contrary, Mr. Zickafoose initiated this suit to avoid an injury from acting in reliance on Upstart's representation that he owes a debt.

Therefore, the allegations in Count IV do not state a claim for fraudulent misrepresentation. Count IV is **DISMISSED**.

### E. Count V – Florida Deceptive and Unfair Trade Practices Act

In Count V, Mr. Zickafoose alleges "Upstart engaged in unfair and deceptive trade practices in violation of the [FDUTPA]." (Doc. 47, p. 13). He alleges Upstart violated the FDUTPA "by attempting to collect on a debt that had been lawfully discharged and for which no legal obligation remained." (Doc. 47, p. 13). Upstart contends Mr. Zickafoose does not state a claim under the statute because attempting to collect a debt does not constitute "trade or commerce" under the FDUTPA. (Doc. 48, p. 19).

The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The FDUTPA defines "trade or

commerce" as the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). "A consumer claim for damages under [the] FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Bilotta v. Citizens Info. Associates, LLC*, No. 8:13-CV-2811-T-30TGW, 2013 WL 12155486 at *2 (M.D. Fla. Dec. 20, 2013) (citation omitted).

The FDUTPA does not apply to debt collection activities because debt collection activities are not considered "trade or commerce." *See e.g. Acosta v. James A. Gustino, P.A.*, No. 6:11-CV-1266-ORL-31, 2012 WL 4052245 at *1 (M.D. Fla. Sept. 13, 2012) (finding the plaintiff failed to state a claim under the FDUTPA because "an attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in Fla. Stat. § 501.203(8)"); *State, Office of Att'y. Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353 (Fla. 4th DCA 2011) (affirming the trial court's finding that the law firm's allegedly deceptive acts to collect debts did not qualify as trade or commerce under the FDUTPA).

Here, Mr. Zickafoose alleges Upstart violated the FDUTPA by attempting to collect a debt. As discussed, the FDUTPA prohibits unfair and

deceptive acts in trade or commerce and courts have consistently held debt collection is not trade or commerce. Therefore, the allegations in Count V do not state a claim under the FDUTPA. Count V is **DISMISSED**.

### F. Count VI – Invasion of Privacy / Harassment

In Count VI, Mr. Zickafoose alleges that "despite lawful notice terminating communication rights" Upstart's repeated unauthorized digital and automated contacts were "intrusive, emotionally distressing, and conducted with reckless disregard for [his] . . . privacy." (Doc. 47, p. 13). Upstart argues that, because Mr. Zickafoose consented to communications, the communications cannot form the basis of an invasion of privacy claim. (Doc. 48, p. 21).

Under Florida law, there are three categories of invasion of privacy torts. *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (listing the four categories within the common law tort of invasion of privacy as: (1) appropriation; (2) intrusion; (3) public disclosure of private facts; and (4) false light in the public eye).[3] It appears Mr. Zickafoose attempts to state a claim under intrusion.[4]

---

[3] The Florida Supreme Court subsequently held that Florida does not recognize "false light in the public eye." *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1115 (Fla., 2008).

[4] Mr. Zickafoose's amended complaint does not explicitly identify the category under

17

Under the common law tort of invasion of privacy, the intrusion category is defined as "physically or electronically intruding into one's private quarters." *Id.* "To constitute an invasion of privacy, the intrusion must be highly offensive to a reasonable person." *Betancourt v. Green Tree Servicing*, LLC, No. 8:13-CV-2759-T-30AEP, 2014 WL 12618198 at *2 (M.D. Fla. Jan. 21, 2014) (citing *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010) (citation omitted). "The offensiveness must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Id.* (citation and internal quotation marks omitted).

Generally, communications attempting to a collect on a debt do not go beyond all possible bounds of decency. *See generally Oppenheim*, 695 F. Supp. 2d 1303 (indicating debt collection communications without more do not rise to the level of "beyond the bounds of decency" or "atrocious and utterly intolerable in a civilized community"). In *Oppenheim*, the plaintiff alleged the tort of inclusion upon seclusion. *Id.* at 1308. The plaintiff in that case received debt collection calls occurring for a period of three months, in some instances as often as six times a day. *Id.* at 1306. Although recognizing the calls to the

---

which he intends to state a claim. However, his response in opposition to the motion to dismiss argues he "plausibly pleads intrusion upon seclusion."

plaintiff were "annoying and bothersome," the court found the conduct was not extreme and outrageous. *Id.* at 1310; *See also Kent v. Harrison,* 467 So.2d 1114, 1114–15 (Fla. 2d DCA 1985) (finding the plaintiff's "state of vexation, irritation, and agitation cannot be the foundation for a finding that [the defendant's] behavior is within the range" of being of "atrocious and utterly intolerable in a civilized community").

Here, Mr. Zickafoose does not state an intrusion claim because he does not allege the communications rose to the level "beyond the bounds of decency." Mr. Zickafoose alleges the "unauthorized contacts" were intrusive and emotionally distressing. His state of vexation, irritation, and agitation cannot be the foundation for finding Upstart's communications to be beyond the bounds of decency.

Therefore, the allegations in Count VI do not state an invasion of privacy claim. Count VI is **DISMISSED**.

### G. Count VII – UCC Violations

In Count VII, Mr. Zickafoose alleges violations of the UCC Article 3. He repeats his contention that Upstart wrongfully dishonored his "restrictive qualified indorsement." In other words, Mr. Zickafoose argues Upstart breached UCC provisions by attempting to collect on funds dispersed to Mr. Zickafoose on which he owned no obligation to re-pay. He specifically identifies

these UCC Sections: 3-501(b)(2); 3- 415(b), 3-603; and 3-311. Upstart contends the UCC is not applicable to the note at issue and, even if it were, Mr. Zickafoose's allegation that he relieved himself of liability through UCC terms is frivolous.

Even if the loan was considered a negotiable instrument, Mr. Zickafoose cannot state a claim for violating the UCC itself. *Cumberbatch* 2025 WL 2373924 at *3 (dismissing UCC claims to the extent they are asserted as independent claims for relief). Therefore, the allegations in Count VII do not state a valid claim to relief. Count VII is **DISMISSED**.

## IV.    CONCLUSION

Count I is dismissed because Upstart is not a debt collector under the meaning of the FDCPA. Count II is dismissed because Mr. Zickafoose does not allege Upstart received notice of a consumer's dispute from a CRA to trigger Upstart's responsibilities as furnisher under Section 1681s-2b. Count III is dismissed because Mr. Zickafoose did not create a new contract through inapplicable UCC provisions, and because courts routinely reject the vapor money theory. Count IV is dismissed because Upstart did not make a false representation and, even if Upstart did, Mr. Zickafoose did not allege a consequent injury by acting in reliance on the representation. Count V is dismissed because the FDUTPA does not apply to debt collection activities.

Count VI is dismissed because Mr. Zickafoose did not allege Upstart's actions amounted to a tortious invasion of privacy by going "beyond the bounds of decency." Count VII is dismissed because Mr. Zickafoose cannot state a claim for violation of the UCC. The action is also dismissed against Mr. Girouard because Mr. Zickafoose no longer brings any claims against him.

It would be futile to allow Mr. Zickafoose to amend his complaint. Mr. Zickafoose has already amended his complaint once and the vapor money theory, which underlies his claims, is routinely dismissed by federal courts as frivolous. Under the current set of facts Mr. Zickafoose cannot assert a viable claim against Upstart. Accordingly, Upstart's motion to dismiss (Doc. 48) is **GRANTED with prejudice.** The Clerk is directed to enter Judgment in favor of Defendant Upstart Network Inc. as to Counts I-VII. The Clerk is further directed to terminate any pending motions and deadlines and close this case.

**ORDERED** in Tampa, Florida, on October 9, 2025.

AMANDA ARNOLD SANSONE
United States Magistrate Judge